STATE, WILLIAM F. VOLK, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF NEWARK.

1. Under the twenty-first section of the amended charter of Newark, passed March 20th, 1857, the common council, by a majority vote of the whole number of its members, has a right to remove the police force and appoint their successors.

2. By the thirty-first section the common council may, by ordinance, regulate the manner in which the common council shall exercise the power conferred by section 21, but it cannot divest itself of the trust which the legislature has confided to it to appoint and remove subordinate officers. Therefore an ordinance which deprives the council of the power, by a majority vote, to appoint and remove, is void.

On *certiorari.*

Argued at February Term, 1885, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *Henry Young.*

For the defendants, *Joseph Coult* and *T. N. McCarter.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The prosecutor was duly appointed captain of the police department of the city of Newark on the 1st day of February, 1884, and has since that time been in possession of said office and engaged in the discharge of its duties.   By an ordinance of the common council of said city, duly passed and approved by the mayor January 3d, 1885, it was provided that thereafter all members of the police force of the city should be appointed and removed only by ordinance, but that said ordinance should not repeal existing ordinances regarding the suspension from duty of members of the police department.   On the evening of March 18th, 1885, the relator, without any cause being assigned therefor, was removed from his said office by the *viva voce* vote of a majority of the whole number of the members of said common council, and not by ordinance.

The mayor of the city promptly communicated to the common council, in writing, his disapproval of this proceeding. If the removal had been made by ordinance it would have required a two-thirds vote of the members of the common council to pass such ordinance over the mayor's veto.

This action of the common council is in direct contravention of the ordinance of January 3d, 1885, and hence its validity depends upon the right of the council to pass that ordinance.   Section 21 of the amended charter of the city of Newark, approved March 20th, 1857, provides "that the common council shall, from time to time, appoint, by a majority of the whole number of the members of said common council, a city clerk, city treasurer, street commissioner, city surveyor, sealer of weights and measures, city counsel, city attorney, chief of police, chief engineer of the fire department, and one or more assistant engineers, one or more collectors of arrears of taxes, one or more overseers of the poor, and such other subordinate officers not herein named as they shall think necessary for the better ordering and governing the said city and the carrying into effect the powers and duties conferred and imposed upon the said common council by this act.   Every

person who shall be appointed to any office under the provisions of this act shall be a resident and elector of the said city, and shall continue in office until the office for which he shall have been appointed shall be declared vacant, or until another person shall be appointed to succeed him and shall enter upon the duties of his office."

In the absence of any subsequent limitation in the city charter upon the power granted in this section, there could be no doubt that the authority of the common council to appoint and remove subordinate officers vested in that body exclusively the right of appointment and removal of the police officers for the city, by the vote of a majority of the whole number of its members.

But the relator relies upon the thirty-first section of the city charter to show that the " subordinate officers " mentioned in the twenty-first section do not include members of the police force. The thirty-first section, among other things, provides that the common council shall have power within the said city to make, establish, publish and modify, amend or repeal ordinances, rules, regulations and by-laws, " to establish, regulate and control a day and night police, and to regulate and define the manner of their appointment and removal, their duties and their compensation." The rule that general legislation on a particular subject must give way to inconsistent special legislation on the same subject is well settled in this state. *State* v. *Morristown*, 4 *Vroom* 57 ; *Cross* v. *Morristown*, 3 *C. E. Green* 305 ; *State Bodine, pros.*, v. *Trenton*, 7 *Vroom* 198. If, therefore, the thirty-first section of the Newark city charter vests the power of appointing the police force in any body other than the common council, such officers must be excluded from the operation of the twenty-first section. This rule of statutory interpretation is not applicable where the two sections of the legislative act can fairly be made to harmonize. The first clear expression of the intention of the law-maker must be accepted as the legislative will, unless the subsequent declaration is so inconsistent with it that the two sections cannot stand together in their integrity. The thirty-first section

does not declare that the common council may appoint or remove the police force by ordinance. The authority is, by ordinance to establish, not appoint, a police force, and to regulate and define the manner of their appointment and removal, their duties and their compensation.

The power to appoint these subordinate officers by ordinance is not granted either in express terms or by necessary implication. The extent of the authority under the thirty-first section, to regulate and define by ordinance the manner of appointment and removal, is to regulate the manner in which the common council shall exercise the power conferred upon it by the twenty-first section. To that end reasonable rules and regulations may be established by ordinance, but in regulating and defining the manner of appointment and removal, the common council cannot divest itself of the trust which the legislature has confided to it to appoint and remove all subordinate officers. There is nothing inconsistent in the two sections, nor any indication of a purpose to permit the common council to allow the mayor or any other person to participate in the performance of the duty imposed by the twenty-first section upon the common council alone.

Under the cases which have been adjudged in this court, it requires very clear language to justify the conclusion that the legislature intended to sanction such unusual proceedings as the appointment of police officers by ordinance, and the right of the mayor to defeat such appointment by interposing his veto.

In *Haight* v. *Love*, reported in 10 *Vroom* 14, the question was whether the mayor of Jersey City had a right to interfere by veto with the action of the board of finance to which was committed the appointment of the city collector. The language of the city charter under which the mayor assumed to exercise the veto power was this: "That the mayor shall have power to veto the action of any board within ten days thereafter; and all ordinances and resolutions shall be certified and forwarded to the mayor as now required by law; and unless said board shall, by a two-thirds vote at its next meet-

ing after receiving notice thereof, vote to sustain said action notwithstanding said veto, said action shall be void."

Mr. Justice Dixon, in delivering the opinion of the court, held that although the word "action" in this provision of the city charter was of very wide import, it could not receive the interpretation claimed for it by the mayor, and furnished no authority to him to reject the appointee of the finance board. He says: "The justness of this conclusion is seen also in considering the inaptitude of the word 'resolution' to signify the election of an officer. While, indeed, an officer may be chosen by resolution, such a mode is rarely adopted. Usually a vote by ballot or *viva voce* indicates the choice. And though it is quite clear that the legislature did not intend to make the mayor's power dependent on the form in which the boards acted, it is almost equally sure that they did not mean to extend his power beyond such action as usually, in organized assemblies, takes the form of resolution or ordinance. Besides, the course now contended for by the relator is an inversion of the common practice when an individual and a board or body of several are to unite in the selection of an officer. Almost universally the individual nominates and the board rejects or ratifies. But here it is claimed the board is to nominate, and the individual is to ratify or reject. The legislature, of course, might adopt such a scheme, but I think when they do they will make it known in language more explicit than that used in this charter."

In the later case of *McDermott* v. *Miller*, 16 *Vroom* 251, it was held that the thirty-fourth section of the charter of Hoboken, directing that every ordinance and resolution affecting the interest of the city shall, before it takes effect, be presented, duly certified, to the mayor for his approval, does not apply to the appointment of officers by the common council. The court said: "That the terms 'ordinance' and 'resolution' are not appropriate to the appointment of a city officer. An election is usually ordered by motion, and is made by ballot or *viva voce*, not by ordinance or resolution. These are used in legislative proceedings, and where they affect the interest of

the city it is important that the executive officer shall have the usual power to veto, but very serious embarrassment might follow if the mayor were given the authority to defeat the will of a majority of council in the appointment of city officers where the law has not made him a member of that body. Legislative bodies are sometimes called upon to confirm the nominations made by an executive officer, but it is not usual to seek the approval of the executive for officers appointed by a legislative body. Such a departure from the ordinary course of proceeding should be manifested by very clear language. In the appointment of officers under this charter the approval of the mayor is not necessary, nor has he the power to veto such appointment."

. The force of the views expressed in these cases is obvious, and they must be regarded as decisive of this controversy. There is surely no clear language to indicate that the framer of the Newark charter meant that the formalities requisite in the passage of an ordinance must be resorted to in order to appoint a policeman for the city. Such intention cannot be found in the power to pass ordinances to regulate and define the manner of appointment and removal.

The word "ordinance" is so inapt to signify the election of an officer, and it would be so anomalous to commit to the mayor of the city the power to reject an appointment by council, that under the cases cited this language cannot be given such effect. The rule is that the statute must be so construed that the whole may stand. *Rudderow* v. *State*, 2 *Vroom* 512; *State, M. & E. R. R. Co., pros.,* v. *Commissioner*, 9 *Vroom* 472.

Full force will be given to the thirty-first section by holding that ordinances may be passed to regulate and define the manner in which the power to appoint and remove, contained in the twenty-first section, shall be used by the common council.

As instances of the proper exercise of this power to regulate, an ordinance might prescribe whether the will of the common council shall be manifested by ballot or *viva voce*; that a nomination shall lie over to a subsequent meeting for

consideration and inquiry before it is acted upon; and I think it is competent also to prohibit removals except for cause.

These are mere regulations of the manner of removal and appointment, and they are legitimate so long as they leave to the common council the exclusive right, by a majority vote of that body, to exercise the power of appointment and removal in the manner prescribed by the ordinance. The course of procedure by which appointments and removals shall be effected may be established by ordinance, but the power to appoint and remove cannot be transferred to persons other than those to whom it is committed by the twenty-first section. The attempt to regulate the manner of appointment and removal in a way that will disable the common council to perform this duty without the concurrence of the mayor, who is not a member of council, is without the authority granted by the thirty-first section. There is an absence of any expression in the latter section which will enable the council to strip itself of its authority. The power must be exercised in conformity to the twenty-first section; it cannot be delegated.

In *Winants* v. *Bayonne*, 15 *Vroom* 114, the power to license being committed to the common council, this court decided that it could not be transferred by ordinance to the mayor or any one else.

The effect of the ordinance relied upon by the relator in this case is to divest the common council of Newark of the power to appoint and remove, and to bestow it upon the mayor and common council. In this respect, under the adjudged cases in this court, the ordinance is illegal and void.

The charter for Newark, in which these provisions are found, was passed in 1857. Since that time no attempt has been made, prior to the passage of the ordinance of January 3d, 1885, to vest in the mayor the power to prevent, by the exercise of his veto, the appointment and removal of police officers by the common council.

In deciding this case, the only question which this court can consider is that of power to remove.

Whether the discharge of the entire police force of the city, without assigning any cause whatever for such indiscriminate action, is a commendable exercise or a gross abuse of the power conferred, is a question which must be decided by those to whom the members of the common council are directly responsible.

The views which have been expressed make it unnecessary to discuss the constitutionality of the legislative act of March 10th, 1885.

The *certiorari* should be dismissed.